## MILES NAT. FARM LOAN ASS'N v. FEDERAL LAND BANK OF HOUSTON.

### Civil Action No. 59.

District Court, N. D. Texas,
San Angelo Division.

April 28, 1943.

A. K. Doss, of Abilene, Tex., and Collins, Jackson, Snodgrass & Blanks, of San Angelo, Tex., for plaintiff.

Lewis Rogers, W. N. Stokes, Jr., and H. A. Berry, all of Houston, Tex., for defendant.

ATWELL, District Judge.

The plaintiff and the defendant were organized under the Federal Farm Loan Act, 12 U.S.C.A. § 641 et seq. the first as a national Farm Loan Association, hereinafter called, "Association," and the second as a Federal Land Bank, hereinafter called, "Bank."

The Association is located at Miles, Texas; the Bank at Houston, Texas, about four hundred miles apart. Each was created shortly after the Act was passed. The Association functions in the counties of Runnells, Concho, Tom Green, and Coke, which counties are contiguous and convenient to the town of Miles.

At the time of the institution of the suit, approximately two hundred and seventy-six loans on farm and ranch lands in said counties, aggregating an unpaid balance of $577,036.41, were outstanding. Said loans had been made on applications of the borrower-members of the Association and made by the Bank. Each loan is endorsed by the Association. Such endorsement guarantees the payment. The loans are long-time loans and are secured by first mortgage liens on lands.

The Association is solvent and bears a first-class designation, which means that it is not liable on any obligation beyond its capacity to pay, and that it has either no delinquencies, or, the delinquencies are minor, or, short-time delinquencies, believed collectable. The classification does not refer to borrower delinquencies.

In its suit filed in the state court, and removed, the Association complains that prior to November 30, 1942, it had serviced all the loans made through it, kept records thereon, and remitted in full such sums as the Bank and Commissioner were entitled to receive. That it had a full and competent quota of officers which included, President, Vice-President, Secretary and Treasurer, and a Board of Directors, as well as a full time employee. That it extended to its borrowers, and to the Bank, all reasonable aid and assistance in servicing its loans. That it efficiently performed such duties, "in keeping with all rules and regulations of the Bank, the Commissioner, and the laws of the United States relating thereto." That this method of doing business had been followed for approximately twenty-five years, when, without excuse, or authority in law, the Bank arbitrarily, and in disregard of its rights, passed a resolution and took away from the Association the right of supervision, servicing and collection of the outstanding loans which had theretofore been managed, collected and serviced by it. That the Bank notified borrowers to make no further payments to the Association, and to have no further dealings with it in connection with such loans, and, "in effect to disregard and ignore the Association's rights in the matter."

That such action has caused, and will continue to cause, it irreparable damage and injury for which it has no adequate remedy at law. That its borrower-members, who are its stockholders, are being deprived of the right of the Association to handle is own business, and to protect its own interests, and to exercise its own judgment and discretion in assisting its borrowers, and watching the details of their business, which may have a bearing upon their ability to meet their installment payments. That this interferes with the keeping of correct records of payments, defaults and delinquencies, and of its own financial condition, and of its obligations to and rights against the Bank, of which it is a stockholder.

It prays that the Bank be restrained from interfering with its rights.

The Association moved to remand the cause; the Bank moved to dismiss it. It seemed to me appropriate to overrule both motions.

The controversy is between two national organizations. The scope within which those organizations function, is fixed in the national statutes. A construction of those statutes is necessary. The amount involved is greatly in excess of the minimum jurisdictional limit.

In its motion to dismiss, the Bank presented the general proposition that nothing was sought in the suit save and except an interference with the business of the Bank which it had a right to carry on under the general law.

Upon this trial, evidence was offered by an agreed stipulation and oral testimony.

Section 676 of Title 12, U.S.C.A., relates to the right of the Bank and the Association to make contracts. Subdivision 3, Section 781, and Sec. 965, of the same Title, deal with voluntary mergers of associations and with other questions that must be solved in this cause. See, also, Secs. 711–722, 743, 744.

Under statutory authority, the Association and the Bank entered into a contract with reference to servicing loans made in the manner indicated, in which it was provided: "It being understood that the Association, in performing such service, is doing so for the protection of its shareholders and not as agent of the Bank." It was also provided that: "Due diligence and effort are to be exercised in making collections of sums payable to the Bank under the terms of mortgages endorsed by the Association and for making collections of sums payable to the commissioner." Likewise: "In the event it may become necessary for the bank, in its discretion, to send a representative to the Association to perform any of the duties of the Association, because of failure or refusal of the Association or any of its officers to discharge such duties, the Bank shall have the option to deduct from the allowances otherwise payable to the Association, the expense to the Bank thus incurred."

The contract also provided: "This plan is temporary and may be changed, modified, or terminated, by the Bank at its option, with or without notice to the Association."

In the resolution passed by the Bank which sought to take from the Association the contract rights that have just been recited, it whereased that " * * * has heretofore authorized the Association to perform all necessary and required services in connection with the Bank and commissioner loans closed through the Association, and, whereas, the Bank, in the capacity aforesaid, deems it advisable to rescind such authority to make provision for use of its own facilities in collecting, servicing, and otherwise handling of loans made through said Association, rescinded and withdrawn all authority theretofore given to the Association to service and collect."

Testimony offered by the plaintiff showed a capable and reputable staff of officers maintained by the Association with an office in a store. Testimony offered by the defendant evidenced a complaint against an office of that sort and showed some delinquencies by borrowers, but the percentage was subsequently reduced.

Under the stipulation it was also required that the Association should use "due diligence and effort in making collections of sums payable to the Bank under the terms of mortgages endorsed by the Association."

The preamble to the rescinding resolution is not contained in the stipulation, but was offered in evidence by the Bank. That preamble discloses that the Bank desired to have the Association merge with an Association at Ballinger, in Runnells County, which the Association did not see fit to do. The statute deals with such mergers but declares that they shall be voluntary.

Testimony also showed that it was the desire and intention of the Bank to carry on its own servicing at Ballinger instead

of at Miles. For the Association, that change would necessitate an extra travel of approximately twelve thousand miles every twelve months by the borrowers, if each borrower made a trip at the time of making his semi-annual installments.

The Association's by-laws made it the duty of that Association to endeavor to prevent the existence of delinquencies on loans endorsed by it, and, "Where the Association has been so empowered by the Bank, to collect, receipt for and transmit to the Bank payments arising out of loans made through the Association."

We discover at the outset that both the Association and the Bank are deeply interested in the paper that has so passed. Both of those parties realized such interests. The Congress gave the right to make contracts with reference to that mutual interest. So, we seem to have a connected whole, under the statute, and by the action of the parties, evidencing their intention that such paper as the Association endorsed, guaranteed and passed on to the Bank, should be serviced by the Association, with the right of the Bank to protect its own interest by looking into such servicing with its own man and charging the expenses of such investigation to the Associatio.1

The Bank does not seek in the rescinding resolution to take from the Association the right to make loans. It merely deprives it of the right to continue its efforts for the loans already made by it. To retroactively deprive the Association of rights arising out of valid contract.

This lending activity through the Association and the Bank, under the Act, is an activity that is close to the people. Simplicity is recommended. Efficiency and honesty are desired. The loans are long-term. That the Association did not see fit to lavishly furnish an exclusive office is no reason for just criticism. Tables, chairs, a decent place, as well as a private place, and efficiently operating officers were maintained by the Association.

### Findings of Fact

1. Both the plaintiff and defendant exist and operate under federal statutes. Each was organized in 1917, the Association doing business in Runnells, Tom Green, Coke and Concho Counties, with its main office at Miles, which is centrally located in and to those four counties.

2. The Association has maintained a decent, respectable office and an efficient, diligent corps of officers, directors, and one paid employee. They have kept in contact with the borrower and aided the borrower when it was necessary in the making of his installment payments, and in otherwise assisting and advising him.

3. That the instruments evidencing the loans made through the Association for the Bank were guaranteed and endorsed by the Association and have been serviced by the Association for approximately twenty-five years under written contracts authorized by the statute between itself and the Bank.

4. That it has not been negligent nor inefficient in the performance of such duties and acts. That it is solvent and has a nice balance on deposit.

5. That the Bank desired to merge the Association with an Association to be set up in Runnells County, as well as to see if it could not lessen the small percentage of borrower delinquencies.

6. That over $500,000 in loans so made and guaranteed are outstanding.

7. That in the latter part of November, 1942, the Bank sought to take away from the Association its right to continue to service and collect such loans.

### Conclusions of Law

Whatever rights the Bank may have reserved to itself within its contracts with the Association for the servicing of loans of the sort mentioned, it is not equitable to permit it to do away with the Association's rights upon that paper which has accumulated during the existence of such contracts, and upon which the Association is liable.

Restraint will issue for the Association against the Bank to that extent, provided that the Bank's right to foreclose shall not be interfered with, nor the Bank's contract right to look into the matter of efficient servicing, nor with its right to do its own servicing from the date of this judgment.